TRUSTEES OF THE MINISTERIAL FUND IN THE FIRST PARISH IN CAMBRIDGE *vs.* FIRST PARISH IN CAMBRIDGE & another.

Suffolk.   March 14, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Devise and Legacy.   Condition.*

The condition of a bequest of $5,000, "as a nucleus of a fund" for the building of a house of worship if $45,000 additional is secured for that purpose within ten years, is not complied with by securing a fund of $48,000 for the purpose of erecting a meeting house and vestry which might be erected together or separately, no part of the fund having been secured for the purpose of erecting a meeting house alone and nearly all of it having been expended in erecting a vestry alone.

BILL IN EQUITY, filed February 18, 1904, by the Trustees of the Ministerial Fund in the First Parish in Cambridge, a corporation, holding a fund as trustee under the will of Susan E. W. Brackett, late of Cambridge, for instructions.

The case came on to be heard before *Loring,* J., who at the request of the parties reserved it upon the plaintiff's bill, the

answers of the several defendants and the agreed facts for determination by the full court, such decree to be entered as law and justice might require.

*C. Almy*, for the First Parish in Cambridge.

*S. Hoar*, for the American Unitarian Association.

KNOWLTON, C. J.   The fifth clause of the will of Susan E. W. Brackett, late of Cambridge, deceased, is in part as follows: "I believe it will be deemed advisable to erect a new house of worship in place of the one now occupied by the First Parish, so, as a nucleus of a fund for the building of such a house of worship, I bequeath to the First Parish in Cambridge, in which my father and brother were deacons for many years, the sum of five thousand dollars, to be held by the trustees of the Ministerial Fund in said parish, until the sum of forty-five thousand dollars additional is secured for that purpose, provided said sum is secured within ten years after the probate of this will, when said trustees are requested to pay over for that purpose said sum and its accumulation.   On the failure to raise said money, they are to pay said sum of five thousand dollars to the American Unitarian Association," etc.   For a long time the parish had owned and used a meeting house as its regular place of worship, and a vestry or parish house, which was a separate building standing away from the meeting house on the same lot, and connected with it by a plank walk.   Before the year 1868, the vestry was moved up to the meeting house and joined to it, the outer walls of neither being removed.   Doors for communication were cut between them, and they were afterwards used together as one building.   The front part, the meeting house, was used for the regular services on Sundays, and the rear part, called the vestry or parish house, was used for less formal religious purposes, for the Sunday school, for Bible classes, for business meetings of the parish and of the church, for meetings of the various charitable organizations connected with the parish, and for social meetings of the parish and church, and it contained the study of the minister.

There is no doubt that the primary object of the legacy was the erection of a meeting house, or place where the regular religious services of the church on Sundays should be held.   The testatrix did not indicate a desire that a vestry should or should

not be included as a part of the church edifice, but of her intention that the new building should be a meeting house, and take the place of the old meeting house, there can be no doubt.

The parish secured, chiefly by subscription, about $48,000 for "a new meeting house and vestry." Of this it paid back to subscribers who were dissatisfied with the subsequent use of the money about $2,300, and of the remainder it expended all but about $4,000 in the erection of a new vestry and parish house. The old meeting house was repaired at an expense of about $10,000, subscribed specially, and the parish now has on hand only about $4,000 of the money originally raised for the erection of a new meeting house and vestry. The question is whether the parish is entitled to have the legacy of $5,000 paid over to it by the trustees, or whether this money shall go to the American Unitarian Association.

The condition on which the legacy was payable required the raising of an additional fund of $45,000 for the erection of a new house of worship. On the performance of the condition the money secured for this purpose would, in favor of the representatives of the testatrix and others interested in this public charity, be impressed with a trust that it should be held and used for that and for no other purpose. The erection of a vestry or parish house is not the erection of a house of worship, within the meaning of the words of the will. If a house of public worship was erected, containing a vestry within its walls, it would not be contrary to the provisions of the will; but if a fund was raised for the erection of a meeting house and vestry which might be separate structures, with no provision showing what part of the fund was to be used for the meeting house and what part for the vestry, the fund as a whole would not be for the erection of a house of worship. Only an indefinite and uncertain part of the fund, which might prove to be a very small part of it, would be raised for that purpose.

While there is a possibility of a different view, the action of the parish tends to show that the fund of $48,000 was secured for the purpose of erecting a meeting house and vestry which might be erected together or separately. No stated part of this fund was secured for the purpose of erecting a meeting house alone. Nearly all of it was expended in erecting a vestry alone.

If this money had been secured in accordance with the terms of the will to erect a house of worship, it would have been a misappropriation of it to expend it in the erection of a vestry alone. After it had been secured for this purpose, persons interested in this public charity, acting through the Attorney General as their representative, could have prevented such a misappropriation of it. The effect of such a misappropriation would have been to defeat utterly the purpose of the testatrix to have a fund of $50,000 which should be used for no other object than the erection of a new house of worship.

If the money had been secured exclusively for the erection of a house of worship, with a vestry as a part of the edifice, whether under the will such a misappropriation by the parish before the legacy was received would have been a failure to comply with the condition of the will, equivalent to a failure to secure the money at all, is a question which we need not decide.

There is a strong presumption that, if this money had been raised in such a way that it was to be exclusively appropriated to the erection of a house of worship, with or without a vestry as a part of the same edifice, the parish would not have applied it to a different use, in violation of the rights of those interested in the purpose of the testatrix, and in the charitable use of the money according to the intention of the donors. It is provided by the agreed statement that the court may draw inferences of fact, and we think that the facts particularly stated call for an inference that the money was raised for the erection of a meeting house and vestry which might be built together or separately, and that therefore, of the amount so secured, no particular sum was secured for the erection of a meeting house or house of worship, within the meaning of the provision in the will. The prescribed condition was not performed, and the court are all of opinion that the First Parish is not now entitled to have the money paid over, and unless the fund is raised before the expiration of the ten years, the American Unitarian Association will be entitled to the legacy, and that a decree for instructions should be entered accordingly.

*So ordered.*